862 So.2d 774 (2003)
Gary B. LANE, d/b/a/ Morris USA and Overseas Corp., Appellant,
v.
WESTFIELD INSURANCE COMPANY, Appellee.
Nos. 5D02-791, 5D02-1278.
District Court of Appeal of Florida, Fifth District.
November 7, 2003.
Rehearing Denied January 16, 2004.
*775 David J. Pettinato, Matthew R. Danahy and Douglas L. Grose of Douglas L. Grose, P.A., Tampa, for Appellant.
W. Douglas Berry, Anthony J. Russo & J. Pablo Caceres of Butler Burnette Pappas LLP, Tampa, for Appellee.
PALMER, J.
Gary Lane appeals the trial court's final orders entering summary judgments against him on his bad faith claims against Westfield Insurance Company. Concluding that the undisputed facts establish that the conditions precedent to Lane's maintenance of a first-party bad faith action were not met, we affirm.
This action involves two bad faith lawsuits filed by Lane against his business insurer, Westfield Insurance Company. The first lawsuit arose out of a lightning strike at Lane's business (Case No. 5D02-791), and the second lawsuit involved a claim for windstorm damage sustained by Lane's business during Hurricane Erin (Case No. 5D02-1278).

The Lightning Claim
In August 1994, Lane filed a lightning claim in which he included a sworn Proof of Loss form alleging that he had suffered a business interruption loss in the amount of $107,685.02 when lightning struck his office. After a dispute arose between the parties in regard to this claim, Westfield filed a declaratory judgment action in federal court alleging that the claim was fraudulent, that Lane had failed to comply with the conditions of his insurance policy, and that Lane had failed to establish his business income loss claim. In response, Lane filed a counterclaim seeking to recover for his business interruption loss. The matter proceeded to trial, after which the jury returned a verdict finding that Lane did not commit fraud and that he did not fail to comply with the conditions of his insurance policy. The jury further found that Lane did establish his business income loss, but the jury awarded him only $11,706.00 in damages on his counterclaim. A final judgment consistent with the jury's verdict was entered on July 15, 1997.
Westfield did not appeal the final judgment, but instead satisfied the judgment by making full payment to Lane on October 9, 1997. In the meanwhile, on July 16, 1997 (one day after judgment was entered by the district court), Lane filed a Civil Remedy Notice in the circuit court pursuant to section 624.155 of the Florida Statutes (1995) alleging that Westfield had established a general business practice of responding to insurance claim disagreements by filing groundless law suits against its insureds, and that Westfield had failed to provide requested information to Lane regarding its adjustor's calculations.[1] *776 Three years later, Lane filed a complaint in the circuit court alleging a first-party bad faith claim against Westfield.

The Windstorm Claim
In 1995, one year after the lightning damage, Hurricane Erin caused additional windstorm damage to Lane's office. Lane submitted a Proof of Loss form to Westfield for $3,016.90 in relation to this damage and Westfield paid the claim. Lane thereafter submitted a second Proof of Loss form to Westfield for additional damages arising from Hurricane Erin, claiming $7,555.29. While the second Proof of Loss was pending, Lane filed a Civil Remedy Notice against Westfield alleging that Westfield had "responded with accusations and has failed to provide its adjuster's estimate to date despite repeated request on 3/31/97."
Westfield responded by filing a declaratory judgment action in federal district court on Lane's windstorm claim. The complaint alleged fraud, failure to establish business income loss, and restitution. The complaint further alleged the discovery of the fact that Lane had received double insurance reimbursement for the windstorm loss.[2] The complaint also alleged that Westfield had overpaid Lane's claim and sought reimbursement for same.
Lane moved to dismiss Westfield's declaratory judgment action, arguing that the district court possessed the discretion to refuse jurisdiction over the matter. The district court agreed and dismissed Westfield's lawsuit.
Thereafter, Lane filed an action in the circuit court against Westfield for first-party bad faith and for common law fraud regarding his windstorm claim.

Circuit Court Proceedings
At this point Lane's two bad faith cases were consolidated by the trial court for pretrial purposes. Westfield filed a motion for summary judgment regarding Lane's lightning strike claim, alleging that Lane's notice was vague and imprecise and failed to provide Westfield with any meaningful direction as to how Westfield could cure the alleged violation. Additionally, Westfield alleged that the Civil Remedies Notice was filed after the lightning claim had been adjudicated by a jury verdict in the federal court and thus the claim was moot.
Westfield at the same time filed a motion for summary judgment regarding Lane's windstorm claim, alleging that the lawsuit failed to set forth the same conduct as alleged in the Civil Remedies Notice, thereby denying Westfield its statutory right to cure. In addition, Westfield maintained that it had cured the condition *777 giving rise to the Civil Remedies Notice within the time prescribed by the Florida statutes.
Upon review, the trial court denied Westfield's motion for summary judgment on the lightning claim and granted the motion for summary judgment on the windstorm claim to the extent that the trial court concluded that Westfield had provided its adjuster's estimate to Lane within sixty days and, as such, cured this claim of bad faith. The trial court also found that the only issue left to consider on both of the claims was Lane's allegation that Westfield engaged in the practice of filing "groundless lawsuits" against its insureds.
Lane then moved for leave to add a claim for punitive damages. The trial court denied the motion, stating that Lane had failed to make an adequate proffer that Westfield engaged in the act of filing groundless lawsuits against its insureds with such frequency as to indicate a general practice or that Westfield's action in commencing the two declaratory judgment actions against Lane in federal court was willful, wanton, and malicious or, alternatively, were in reckless disregard for Lane's rights.
Westfield again moved for summary judgment claiming that since both lawsuits had been resolved by the district court within sixty days of the date of the filing of Lane's Civil Remedy Notices, Lane could not succeed on his claim for bad faith. Westfield argued that the circumstances giving rise to the alleged violation regarding the lightning claim had been cured by the jury trial in district court (which Westfield did not appeal) and that the alleged violation regarding the windstorm claim had been cured by dismissal of the action in the district court.
Lane responded that Westfield had not cured the violation because Westfield did not pay the jury verdict on the lightning claim within sixty days of the filing of the Civil Remedy Notice. He further argued that dismissal of the windstorm claim by the district court did not constitute a cure by Westfield.
The trial court entered a final summary judgment in favor of Westfield on both the windstorm and lightning claims. Regarding the windstorm claim the trial court concluded as follows:
ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT AS TO COUNT I OF PLAINTIFF'S SECOND AMENDED COMPLAINT (WINDSTORM DAMAGE).
* * *
J. Plaintiff's June 11, 1997, civil remedy notice purports to allege that Defendant committed two wrongful acts. First, that Defendant "responded with accusations" and second, that Defendant failed to provide its adjuster's estimate. It is undisputed that Defendant provided the requested estimate within sixty days of the notice and this Court has previously granted partial summary judgment on such issue. The allegation that Defendant "responded with accusations" is simply too vague to give Defendants notice of what it did wrong so that it could cure same within sixty days. Furthermore, the allegation that Defendant "responded with accusations" fails to comply with the statute's requirement that the civil remedy notice "state with specificity ... the facts and circumstances giving rise to the violation."
K. Plaintiff's July 16, 1997, civil remedy notice alleges that Defendant also committed the wrongful act of filing groundless lawsuits in federal court against its insured. However, it is undisputed *778 that such circumstance was "cured" approximately five weeks later when the federal court dismissed such action. Furthermore, no appeal was taken by Defendant from such dismissal.
Regarding the lightning claim, the trial court ruled as follows:
ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT AS TO COUNT I OF PLAINTIFF'S SECOND AMENDED COMPLAINT (LIGHTNING DAMAGE).
* * *
M. Plaintiff's July 16, 1997 civil remedy notice alleges that Defendant committed the wrongful act of filing groundless lawsuits against its insured. It is undisputed that the only lawsuit filed by Defendant, which related to Plaintiff's lightning damage claim, was the federal declaratory judgment action referenced above. Assuming arguendo, such complaint was groundless and filed in bad faith, such wrongful act was "cured" within the aforesaid 60-day window when Defendant chose not to appeal the adverse judgment on its complaint against Plaintiff. If Defendant had chosen to appeal the jury's verdict, then no "cure" would have occurred within the 60-day window. By not filing an appeal, the alleged wrongful act of "filing groundless lawsuits" was cured by late August, 1997.
N. During the arguments, on Defendants's Amended Motion for Summary Judgment, Plaintiff acknowledged that if the $11,706.00 judgment entered on his counterclaim had been paid by Defendant within 60 days of the civil remedy notice, summary judgment would admittedly have been appropriate. The Defendant contends that Plaintiff's failure to satisfy the judgment within 60 days requires a different result. The Court rejects this argument. First, the civil notice remedy alleges that Defendant's wrongful act was the filing of groundless lawsuits, not defending against a claim brought by Plaintiff. The alleged groundless claim (Defendant's declaratory judgment complaint) was terminated when the federal court entered the final judgment and Defendant did not appeal same. The $11,706.00 award was entered on Plaintiff's counterclaim. The civil remedy notice does not allege that it was wrongful for Defendant to defend against Plaintiff's federal counterclaim. Indeed, Plaintiff sued for in excess of $107,000.00 and was awarded only $11,706.00 by the jury. Thus, it can hardly be argued that defense of the federal counterclaim was "groundless." But, most importantly, the civil remedy notice did not allege Defendant engaged in wrongful conduct in defending the counterclaim. Therefore, there was no alleged wrongful act committed by the Defendant relating to the federal counterclaim which could be cured or remedied. Second, the civil remedy notice did not allege that Defendant had wrongfully failed to pay a claim or had wrongfully failed to pay on a judgment. The civil remedy notice only alleged that the Defendant wrongfully filed a groundless lawsuit against its insured. Section 624.155(2)(d) requires that the civil remedy notice state with specificity the facts and circumstances giving rise to the violation. The allegation that Defendant has "filed groundless litigation" cannot be fairly construed to also mean that Defendant failed to timely pay a judgment or that Defendant raised groundless defenses to the claim brought by Plaintiff.
O. The undisputed facts establish, as a matter of law, that the conditions precedent to Plaintiff's maintaining of this *779 first party bad faith action against Defendant were not met.
We agree with the trial court's well-reasoned conclusions and therefore affirm same.

Analysis
In 1982, the Florida Legislature enacted section 624.155 of the Florida Statutes, which provides that any person can institute a civil action against an insurer when the person is damaged by the insurer's failure to settle claims in good faith. However, as a condition precedent to bringing such an action, Florida's Department of Insurance and the insurer must be given sixty days written notice of the violation. See § 624.155(2)(a), Fla. Stat. (1993). No action will lie if, within those sixty days, "the damages are paid or the circumstances giving rise to the violation are corrected." See § 624.155(2)(d), Fla. Stat. (1993). In Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co., 753 So.2d 1278 (Fla.2000), the Florida Supreme Court explained that, "in creating this statutory remedy for bad-faith actions, the Legislature provided this sixty day window as a last opportunity for insurers to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed." Id. at 1284. The purpose of the civil remedy notice is to give the insurer one last chance to settle a claim with its insured and avoid unnecessary bad faith litigationnot to give the insured a right of action to proceed against the insurer even after the insured's claim has been paid or resolved.
Here, the trial court properly granted Westfield's motion for summary judgment on both the windstorm claim and the lightning claim because the record established, as a matter of law, that the conditions precedent to Lane's maintaining a first-party bad faith action against Westfield were not met. Specifically, Lane's bad faith complaints alleging that Westfield had filed groundless lawsuits against him were cured within or before the expiration of the sixty day period required under section 624.155(2)(d) of the Florida Statutes. The complaint regarding the lightning claim was cured by a jury verdict in favor of Lane in the district court (which became final when no appeal was taken), and the complaint regarding the windstorm claim was cured by dismissal of Westfield's claim in the district court.
Pursuant to the court's ruling in this matter, Lane's argument regarding punitive damages is rendered moot.
AFFIRMED.
SHARP, W. and PLEUS, JJ., concur.
NOTES
[1] Section 624.155 provides as follows:

624.155. Civil remedy
(1) Any person may bring a civil action against an insurer when such person is damaged:
* * *
(b) By the commission of any of the following acts by the insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;
* * *
[2](d) No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.
§ 624.155(1)(b)1(d), Fla. Stat. (1993)(emphasis added).
[2] Without Westfield's knowledge, Lane also submitted a Proof of Loss relating to the same windstorm damage to Nationwide Insurance Company and he received $8,384.39 thereon.