[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10265
Non-Argument Calendar

_____

D. C. Docket No. 6:09-cv-00876-MSS-KRS

ERSKIN BELL,
as Guardians and Parents of Erskin Bell, II,
PHILLIPA ST. MARIE-BELL,
as Guardians and Parents of Erskin Bell, II,

Plaintiffs-Appellants,

versus

GEICO GENERAL INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 14, 2012)

Before DUBINA, Chief Judge, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Erskin Bell, Sr. (Erskin, Sr.) and Phillipa St. Marie-Bell ("Phillipa") (collectively "the Bells"), as guardians and parents of Erskin Bell, II ("Erskin"), appeal the district court's order granting Defendant-Appellee GEICO General Insurance Company's ("GEICO") motion for summary judgment and denying the Bells' motion for partial summary judgment.  Upon review of the record and the parties' briefs, we affirm the district court's judgment in favor of GEICO.

## I. Background

GEICO issued an automobile liability insurance policy to the Bells providing non-stacking Uninsured/Underinsured Motorist ("UM") coverage in the amount of $25,000.00 per person and $50,000.00 per occurrence.  The policy's "payment of loss" provision states that:

Any amount due is payable:

(a) to the insured or his authorized representative,

(b) if the insured is a minor, to his parent or guardian,

(c) if the insured is deceased, to his surviving spouse; otherwise

(d) to a person authorized by law to receive the payment, or to a person legally entitled to recover payment for the damages.

[GEICO] may, at [its] option, pay an amount due in accordance with (d) above.

2

[R. 62-2 at 32–33.]

On November 30, 2008, the Bells' son, Erskin, was involved in a very serious automobile accident which left Erskin, in a coma.  The accident required Erskin's transport to and care from Orlando Regional Medical Center ("the hospital"). GEICO was first notified of Erskin's injury on December 2, 2008, when it received a call from the hospital requesting information about coverage under the Bells' policy.  GEICO immediately began investigating the loss and contacted Erskin, Sr.

On December 3, 2008, GEICO claims supervisor Karen Hall ("Hall") noted that GEICO would tender its full $25,000.00 UM policy limits to the Bells once she received confirmation from underwriting as to the available amount of coverage under the policy.  In accordance with Chapter 57-1644, Laws of Florida and Orange County Code of Ordinances, Part II, Chapter 20, Article IV, the hospital filed a lien on December 12, 2008, which attached to "any and all . . . claims . . . accruing to [Erskin]"  [R. 62-7 at 1.]  The same day, Nick Denton ("Denton"), a GEICO claims examiner, contacted Phillipa and told her that GEICO would be issuing a check for the $25,000.00 UM policy limits and that the check would include the hospital as a payee.  Denton also wrote Phillipa

3

confirming their conversation and providing her with a check for the $25,000.00 UM policy limits, a proposed release of the UM claim, a certified copy of the insurance policy, an affidavit of coverage, and the UM selection form showing the Bells' amount of UM coverage.

The Bells' attorney, Nathan Carter, Esq. ("Carter"), wrote GEICO a letter, received on December 15, 2008, advising that he represented the Bells and requesting disclosure of their insurance information. Denton wrote Carter on the same date, provided a certified copy of GEICO's policy, an affidavit of coverage, the Bells' uninsured motorist selection form, and advised that GEICO had tendered the $25,000.00 UM policy limits to the Bells by check payable to Erskin Bell and the hospital.[1] Afterward, the Bells contend that Carter or his paralegal contacted Denton two or three times by phone, stating that Phillipa's health insurance would cover the hospital expenses and asking GEICO to reissue the check to the Bells, or alternatively, to Carter's firm trust account. Denton does not remember the substance of each conversation, but claims that if Carter's paralegal in fact raised the possibility of reissuing the settlement check to the law firm's trust account, that Denton would have requested confirmation in writing that Carter's firm would satisfy the hospital's lien. Carter drafted a letter on January

---

[1] The check was presumably payable to Erskin, *Sr.*, as he was the GEICO policy holder.

4

23, 2009, requesting a check made payable to his firm's trust account and promising to resolve the hospital lien, but GEICO never received the letter. It is not clear from the record whether the letter was actually mailed. Hall testified that had she been aware of Carter's request to reissue the check to the firm trust account, GEICO would have done it so long as Carter promised to protect GEICO from any obligation on the lien.

On January 28, 2009, Carter filed a Civil Remedy Notice ("CRN") on behalf of Erskin, Sr. with the Florida Department of Financial Services. The CRN identified "claim denial" as the "reason for notice," and described the "facts and circumstances giving rise to the insurer's violation" as follows: "CLAIMANT HAS PROVIDED PROOF OF CLEAR LIABILITY ON THE PART OF AN UNDERINSURED/UNINSURED MOTORIST, AND DAMAGES IN EXCESS OF THE POLICY LIMITS, YET GEICO HAS FAILED TO UNCONDITIONALLY TENDER THE INSURED'S UM POLICY LIMITS." The CRN identified Denton as the GEICO employee most responsible for and knowledgeable of the facts surrounding the alleged violation. Upon receipt of the CRN on February 2, Denton claims that he tried to call Carter, but was unable to reach him. On February 6, 2009, Denton responded to the CRN by writing Carter, explaining that GEICO had already tendered payment and that it would reissue the

5

check without the hospital as a payee if GEICO received written notice from Carter explaining how the hospital's lien would be satisfied. On February 20, 2009, Carter responded by letter to GEICO, refusing any check made payable to the hospital. For whatever reason, Carter did not address GEICO's request for the firm's assurance that it would be responsible for satisfaction of the hospital's lien.

The Bells were also entitled to $10,000.00 in personal injury protection ("PIP") coverage from GEICO. Another GEICO employee, Veronica Williams ("Williams"), who had no interaction with Denton, separately processed the PIP claim and allegedly paid the entire $10,000.00 to an ambulance company, rather than paying $5,000.00 to the hospital. GEICO then refused to pay the hospital the $5,000.00 in PIP coverage until GEICO was reimbursed $5,000.00 from the ambulance company. The hospital would not bill Philippa's health insurance company or release its lien until receiving notification from GEICO that the Bells' PIP coverage had been exhausted. The hospital's lien was released on May 29, 2009, once GEICO reissued $5,000.00 for PIP coverage to the hospital. On June 12, 2009, GEICO issued a new $25,000.00 check, payable solely to Erskin Bell. The Bells refused to accept the $25,000.00, as they had already filed a complaint in state court against GEICO alleging first-party bad faith for GEICO's failure to settle their UM claim within the statutory cure period. After GEICO removed the

6

case to federal court, answered the complaint, and settled some issues in mediation, the parties filed cross motions for summary judgment on the first-party bad faith claim. The district court decided the motions in GEICO's favor, and the Bells timely filed this appeal.

## II. Standard of Review

We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Perry v. Sec'y, Fla. Dep't of Corrs.*, 664 F.3d 1359, 1363 (11th Cir. 2011).

## III. Discussion

Fla. Stat.§ 624.155(1)(b)1, which creates a cause of action for first-party bad faith, provides that an insurer is liable if it does not attempt "in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for [the insured's] interests." An insurer's simple negligence does not amount to bad faith. *See DeLaune v. Liberty Mut. Ins. Co.*, 314 So. 2d 601, 603 (Fla. Ct. App. 1975). Before an insured may bring a suit for first-party bad faith, he or she must give the insurer written notice of the alleged violation by filing a CRN. Fla. Stat. § 624.155(3)(a). If "within 60 days after filing [the CRN], the damages are paid or the circumstances giving rise to the violation are corrected," then no claim for bad

7

faith exists.  Fla. Stat. § 624.155 (3)(d).  To cure a violation, the insurer must tender "the amount owed pursuant to the express terms and conditions of the policy."  *Talat Enters., Inc. v. Aetna Cas. & Surety Co.*, 753 So. 2d 1278, 1282 (Fla. 2000).

In the instant case, the district court found that the Bells never acquired a claim under Fla. Stat.§ 624.155 because GEICO tendered the full policy coverage, $25,000.00 payable to Erskin, Sr. and the hospital, in compliance with the Bells' insurance policy providing for payment of loss "to a person authorized by law to receive payment, or to a person legally entitled to recover payment for the damages."  [R. 94 at 6 (quoting R. 62-2 at 33).]  On appeal, the Bells allege error on three grounds discussed below.

*A. GEICO's responsibility for delay in the release of the hospital lien*

The Bells first argue that the district court ignored GEICO's errors in processing their PIP claim that created and prolonged the hospital's lien on their $25,000.00 in UM funds.  They allege that by erroneously paying their PIP funds entirely to an ambulance company, and then delaying a $5,000.00 payment to the hospital until receiving reimbursement from the ambulance company, GEICO's action (and later, inaction) kept the hospital lien in place.  Absent the existence of

8

the hospital lien, GEICO would have issued the check to the Bells as payees, as they demanded. The Bells' position is without merit for several reasons.

First and foremost, as the district court held, GEICO's payment of loss did not amount to bad faith since the "express terms and conditions of the [Bells'] policy" allowed for payment to the hospital, a person entitled by law to receive payment. *See Talat*, 753 So. 2d at 1282. Thus, we conclude that the district court correctly reasoned that GEICO's error and delay in routing $5,000.00 from the Bells' PIP claim to the hospital did not change the fact that GEICO was contractually entitled to render payment to the hospital so long as the hospital held its valid lien. *See Dade Cnty v. Pavon*, 266 So. 2d 94, 96 (Fla. Ct. App. 1972) (holding that upon admission to a hospital, the hospital's lien "attached to the proceeds of all [insurance] claims accruing to the patient or his legal representative as a result of the patient's hospitalization").

Second, we conclude that while GEICO's error and delay in the handling of the separate PIP claim may constitute negligence, it does not rise to the level of a bad faith failure to settle the UM claim. Third, in the CRN – the statutory vehicle for curing an insurer's bad faith denial of a claim – Carter gave GEICO no facts explaining the connection between the delayed PIP payment to the hospital and the

9

hospital's unresolved lien on the UM claim payment.[2]  The Bells respond that GEICO never asked Carter for more information about the vague complaint. Further, they claim that they could not address the PIP issue in the CRN because they were unaware of the connection between the mishandled PIP claim and the lien on UM proceeds until after filing the CRN.  Even so, Fla. Stat.§ 624.155(3)(b) requires the insured to explain in the CRN the "facts and circumstances" surrounding the insurer's bad faith in order to allow the insurer to remedy the problem.  The Bells' CRN did not afford GEICO the opportunity to correct "the circumstances giving rise to the [alleged] violation."  *Id.* § 624.155(3)(d); *see also Lane v. Westfield Ins. Co.*, 862 So. 2d 774, 779 (Fla. Ct. App. 2003) (reasoning that "[t]he purpose of the [CRN] is to give the insurer one last chance to settle a claim with its insured and avoid unnecessary bad faith litigation—not to give the insured a right of action to proceed against the insurer even after the insured's claim has been paid or resolved.")  For all these reasons, we conclude that the Bells have failed to show how GEICO's conduct amounted to a bad faith refusal to settle their UM claim.  Thus, we hold that the district court correctly found that no cause of action for first-party bad faith ever came into existence.

---

[2] Similarly, the CRN is devoid of facts explaining how GEICO acted in bad faith by failing to cooperate with Carter to issue the check to his law firm's trust account upon his assurance that the firm would be responsible for the hospital lien.

*B. The Bells' additional arguments*

Additionally, the Bells argue that the "payment of loss" provision in the insurance policy, quoted *supra*, requires GEICO to remit payment to *either* the insured *or* the hospital, but not both.  They posit that GEICO should not have issued a check payable to both the insured and a lienholder, and that to justify this action, the district court improperly supplied the word "and" in the place of an implied "or" between the policy's descriptions of the persons to whom GEICO was entitled to tender payment.  Alternatively, they argue that the "payment of loss" provision is ambiguous, and therefore, the insurance policy should have been interpreted in their favor.  This contractual interpretation argument was not raised in the district court.  Normally, we will not consider an issue raised for the first time on appeal.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  The Bells urge us to consider this argument because (1) contract interpretation is a purely legal issue, rather than a factual question; and (2) our refusal to consider the argument would result in a miscarriage of justice.  *See Garcia v. Pub. Health Trust of Dade Cnty.*, 841 F.2d 1062, 1066 (11th Cir. 1988) (explaining exceptions to our custom of refusing consideration of arguments raised for the first time on appeal).  We recognize that Florida courts have long held that an insurer faced with competing demands for payment from the insured

11

and a hospital has the option to "ma[k]e a check for the limits [of the policy] payable to both of the competitors, the hospital and the insured." *Gov't Emp. Ins. Co. v. Gonzalez*, 512 So. 2d 269, 270–71 (Fla. Ct. App. 1987) (citing *Fernandez v. S.C. Ins. Co.*, 408 So. 2d 753, 755 (Fla. Ct. App. 1982). Thus, we decline to consider the Bells' argument because our refusal to do so could not result in a miscarriage of justice.

Finally, the Bells argue, also for the first time, that GEICO's defense based on the policy's "payment of loss" provision should be estopped by the "mend the hold" doctrine, which prohibits a party from taking inconsistent positions during litigation. The Bells allege that when Carter disputed the UM settlement check's listing of the hospital as payee, GEICO never relied on the "payment of loss" provision in the policy. Even if the "mend the hold" argument has merit, it requires us to consider factual questions regarding GEICO's consistent or inconsistent behavior. We therefore decline to entertain this argument as well. *See Garcia*, 841 F.2d at 1066.

## V. Conclusion

The circumstances surrounding Erskin's car accident and incapacitation are very unfortunate. However, the facts of this case, even when considered in the light most favorable to the Bells, do not require resolution by a jury. As a matter

12

of law, we conclude that GEICO did not act unfairly or dishonestly toward the Bells by refusing to settle their UM claim on the Bells' terms. GEICO promptly responded to the Bells' claim, settled for the full amount available under the policy, and acted within its rights under the policy to issue a check payable to both the Bells and the hospital. Consequently, we affirm the district court's grant of summary judgment in favor of Geico.

**AFFIRMED.**

13