DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**JOSEPH CAMMARATA** and **JUDY CAMMARATA,**
Appellants,

v.

**STATE FARM FLORIDA INSURANCE COMPANY,**
Appellee.

No. 4D13-185

[September 3, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Eileen O'Connor, Judge; L.T. Case No. 11-27972 14.

George A. Vaka and Nancy A. Lauten of Vaka Law Group, Tampa, and Kelly L. Kubiak of Merlin Law Group, Tampa, for appellants.

Paul L. Nettleton of Carlton Fields, P.A., Miami, for appellee.

***EN BANC***

PER CURIAM.

The insureds appeal a final summary judgment finding that their bad faith action was not ripe. They argue that because the insurer's liability for coverage and the extent of their damages has been determined, their bad faith action was ripe. The insurer argues that because the insurer's liability for *breach of contract* has not been determined, the insureds' bad faith action was not ripe. Based on Florida Supreme Court case law, we are compelled to agree with the insureds' argument. We hold that an insurer's liability for coverage and the extent of damages, and not necessarily an insurer's liability for breach of contract, must be determined before a bad faith action becomes ripe. Thus, we reverse and remand for reinstatement of the insureds' bad faith action in this case.

In this opinion, we first present the policy claim's chronology. Second, we present the bad faith action's history, including discussion of our case law. Third, we examine Florida Supreme Court precedent which compels our reversal and our need to recede from one of our recent opinions.

*The Policy Claim's Chronology*

October 2005 – The insureds sustained damages to their home as a result of Hurricane Wilma.

September 2007 – The insureds filed a claim for benefits under their homeowners' policy.

October 2007 – The insurer notified the insureds that it had inspected their home, estimated the amount of their damages to be lower than the policy deductible, and owed no payment to them as a result.

April 2008 – The insureds requested the insurer to participate in the policy's appraisal process. The insureds' request identified their appraiser.

May 2008 – The insurer identified its appraiser and requested the insureds' appraiser's damage estimate.

June 2008 – The insureds' appraiser submitted a damage estimate which was higher than the policy deductible.

July 2008 – The insurer's appraiser submitted a damage estimate which was lower than the policy deductible.

August 5, 2008 – The insurer filed a petition requesting the circuit court to appoint a neutral umpire pursuant to the policy.

August 15, 2008 – The insureds filed a petition requesting the circuit court to appoint a neutral umpire pursuant to the policy.

October 2008 – The circuit court appointed a neutral umpire.

October 16, 2009 – The umpire issued a damage estimate in an amount lower than the insureds' appraiser's estimate but higher than the insurer's appraiser's estimate. The estimate was higher than the policy deductible.

October 27, 2009 – The insurer's appraiser agreed to the umpire's damage estimate.

December 2009 – The insurer paid the insureds the umpire's damage estimate minus the policy deductible.

April 2010 – The circuit court entered an agreed order dismissing with prejudice the parties' petitions to appoint a neutral umpire.

*The Bad Faith Action's History*

After the circuit court entered the agreed order dismissing with prejudice the parties' petitions to appoint a neutral umpire, the insureds filed their action against the insurer for not attempting in good faith to settle their claim. *See* § 624.155(1)(b)1., Fla. Stat. (2011) ("Any person may bring a civil action against an insurer when such person is damaged . . . . [b]y . . . [the insurer's] [n]ot attempting in good faith to settle claims when, under all the circumstances, [the insurer] could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests[.]"). The bad faith action alleged that, before the umpire was appointed, the insureds filed a notice of violation pursuant to section 624.155, Florida Statutes (2011). *See* § 624.155(3)(a), Fla. Stat. (2011) ("As a condition precedent to bringing an action under this section, the [Department of Financial Services] and the authorized insurer must have been given 60 days' written notice of the violation."). The bad faith action further alleged that the insurer did not pay the damages or correct the alleged violation. *See* § 624.155(3)(d), Fla. Stat. (2011) ("No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.").

The insurer filed a motion for summary judgment, and the insureds responded. In support of their positions, the insurer and the insureds each cited a different opinion from this court. We will discuss the motion, the response, and the cited opinions in detail because of the apparent discrepancy between our opinions' holdings.

The insurer's motion argued, among other things, that because the insurer's liability for *breach of contract* had not been determined, the insureds' bad faith action was not ripe. In support, the insurer relied on this court's opinion in *Lime Bay Condominium, Inc. v. State Farm Florida Insurance Co.*, 94 So. 3d 698 (Fla. 4th DCA 2012).

In *Lime Bay*, a dispute arose between the insured and the insurer over the amount of a claim for property damage suffered during Hurricane Wilma. The insured filed a complaint for breach of contract against the insurer. The breach of contract action later was abated when the parties engaged in the appraisal process. The appraisal process resulted in an award closer to the amount of the insured's damage claim. The insurer paid the appraisal award to the insured. The insured then filed an action against the insurer for not attempting in good faith to settle the claim. The insurer filed a motion to dismiss the bad faith action, arguing that there had not been a final determination of liability and maintaining that it

3

intended to dispute liability in the breach of contract action. The circuit court agreed with the insurer and dismissed the bad faith action as prematurely filed.

We affirmed. *Id.* at 699. We reasoned that the insured "did not, and could not, allege that there had been a final determination of liability since the [insured's] breach of contract case was still pending." *Id.* (citation omitted). We directed the circuit court to "first resolve the issue of [the insurer's] liability for breach of contract, as well as the significance, if any, of the appraisal award." *Id.* (citation omitted).

In response to the insurer's reliance on *Lime Bay* in this case, the insureds argued that only an insurer's liability for coverage and the extent of damages, and *not* for breach of contract, must be determined before a bad faith action becomes ripe. In support, the insureds relied on this court's more recent opinion in *Trafalgar at Greenacres, Ltd. v. Zurich American Insurance Co.*, 100 So. 3d 1155 (Fla. 4th DCA 2012).

In *Trafalgar*, a dispute arose between the insured and the insurer over the amount of a claim for property damage suffered during Hurricane Wilma. The insured filed a complaint for breach of contract against the insurer. The insurer invoked the appraisal provision of the contract. The appraisal process resulted in an award closer to the amount of the insured's damage claim. The insurer paid the appraisal award to the insured and moved for summary judgment on the breach of contract claim. Meanwhile, the insured moved to amend its complaint to state an action against the insurer for not attempting in good faith to settle. The circuit court granted both the insurer's motion for summary judgment on the breach of contract claim and the insured's motion to amend to state a bad faith action. The insurer then moved for summary judgment on the bad faith action. The insurer argued that because the court granted the insurer's motion for summary judgment on the breach of contract action, the insured failed to obtain a favorable resolution on the breach of contract claim. The circuit court agreed with the insurer and granted summary judgment on the bad faith action. The court rested its decision on a finding that the insured's ability to assert a bad faith action was dependent upon the insured having obtained a favorable resolution or determination of liability in the underlying breach of contract action. The court reasoned that because the insured lost on summary judgment on the breach of contract action, the insured failed to satisfy that prerequisite and, therefore, was precluded from proceeding with a bad faith action.

We reversed. *Id.* at 1157-58. We held that an appraisal award which occurred after the insured filed suit for breach of contract, "constitute[d] a

'favorable resolution' of an action for insurance benefits, so that [the insured] . . . satisfied the necessary prerequisite to filing a bad faith claim." *Id.* at 1158. We reasoned that the circuit court's summary judgment in the insurer's favor on the breach of contract action was based on the insurer's compliance with the contract after the appraisal process. *Id.* at 1157. Thus, we concluded that "the appraisal award was tantamount to a 'favorable resolution' necessary to proceed with a bad faith action." *Id.* at 1157-58 (citation omitted). We rejected the insurer's argument that the summary judgment in its favor on the breach of contract action precluded the insured's ability to pursue the bad faith action. *Id.* at 1158. Citing our supreme court's precedent, we reasoned that "[a] judgment on a breach of contract action is not the only way of obtaining a favorable resolution" necessary to proceed with a bad faith action. *Id.* (citing *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216 (Fla. 2006) (an arbitration award establishing the validity of an insured's claim satisfies the condition precedent required to bring a bad faith action)). However, our opinion in *Trafalgar* did not mention its apparent discrepancy with *Lime Bay*.

After considering the parties' arguments in this case, the circuit court granted the insurer's motion for summary judgment. In support of its decision, the circuit court relied on *Lime Bay*.

After the circuit court entered a final judgment, this appeal followed. As in the circuit court, the insureds argue that because the insurer's liability for coverage and the extent of their damages has been determined, their bad faith action was ripe. The insurer again argues that because the insurer's liability for *breach of contract* has not been determined, the insureds' bad faith action was not ripe.

Our review is de novo. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1074 (Fla. 2001) ("The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo.") (footnote omitted).

*Supreme Court Precedent Compelling Our Reversal*

Based on our supreme court's precedent, we are compelled to agree with the insureds' argument. We hold that an insurer's liability for coverage and the extent of damages, and not an insurer's liability for breach of contract, must be determined before a bad faith action becomes ripe. Our holding is based on the evolution of our supreme court's holdings from *Blanchard v. State Farm Mutual Automobile Insurance Co.*,

5

575 So. 2d 1289 (Fla. 1991), to *Vest v. Travelers Insurance Co.*, 753 So. 2d 1270 (Fla. 2000). We address each case in detail.

In *Blanchard*, the insureds filed a breach of contract action against their insurer in state court. The insureds won a verdict against the insurer. The insureds then filed an action against the insurer in federal court for bad faith failure to settle. The insurer moved to dismiss the bad faith action. The insurer argued that the insureds had to assert their bad faith action along with the breach of contract action in state court. The federal district court granted the motion to dismiss.

On review, the Eleventh Circuit Court of Appeals certified to our supreme court the following question: "Does an insured's claim . . . under section 624.155(1)(b)1., Florida Statutes, for allegedly failing to settle the . . . claim in good faith accrue before the conclusion of the underlying litigation for the contractual . . . benefits?" *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 903 F.2d 1398, 1400 (11th Cir. 1990).

In response, our supreme court answered:

> [A]n insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue. It follows that an insured's claim . . . for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual . . . benefits. Absent a determination of the existence of liability . . . and the extent of the [insured's] damages, a cause of action cannot exist for a bad faith failure to settle.

*Blanchard*, 575 So. 2d at 1291.

Reading *Blanchard*'s certified question and answer in a vacuum, without the knowledge of the procedural context in which it arose – the pre-existence of a breach of contract action – the reader logically might assume that an insured must have filed a breach of contract action, and then obtained a favorable resolution of the breach of contract action, before a bad faith action accrues. However, no language in *Blanchard* expressly states that an insured must have filed any breach of contract action before a bad faith claim accrues. Rather, another interpretation of *Blanchard* is that: (1) the insured need only obtain a "determination of the existence of liability . . . and the extent of the [insured's] damages" on the underlying claim "before the cause of action for bad faith in settlement

6

negotiations can accrue"; and (2) *Blanchard*'s references to the "underlying first-party action for insurance benefits" and "underlying litigation for the contractual . . . benefits" being "resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue" related only to the procedural context under which *Blanchard* arose.

The latter interpretation of *Blanchard* appears to have been articulated by our supreme court's later opinion in *Vest*. In *Vest*, the insured demanded her insurer to pay its policy limits on her claim. After the insurer did not pay its policy limits, the insured filed an action claiming that the insurer refused to settle and acted in bad faith in failing to pay its policy limits. The insurer later paid its policy limits to the insured. The insurer then filed a motion for summary judgment on the bad faith action. The circuit court granted the motion because the insurer had paid its policy limits to the insured. On appeal, the district court affirmed. *Vest v. Travelers Ins. Co.*, 710 So. 2d 982, 984 (Fla. 1st DCA 1998).

However, our supreme court quashed the district court's decision with direction that the insured's bad faith action be allowed to proceed. *Vest*, 753 So. 2d at 1276. The supreme court reasoned:

> We understand that [*Blanchard's*] language, "Absent a determination of the existence of liability . . . and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle," . . . may be so broadly stated that our holding could be read as the district court has read it. For that reason we will here clarify.

> First, we point out that *Blanchard* arose in the context of a certified question arising out of an issue as to whether the failure to pursue a bad-faith action for violation of section 624.155(1)(b)1[.] in an action for breach of the underlying insurance contract for nonpayment of benefits was the improper splitting of a cause of action. We held that it was not. Our decision in that case had to do with the timing of the bringing of causes of actions and not as to what claims could be pursued when a claim for bad faith ripened.

> Second, we expressly state that *Blanchard* is properly read to mean that the "determination of the existence of liability . . . and the extent of the [insured's] damages" are elements of a cause of action for bad faith. Once those elements exist, there is no impediment as a matter of law to a recovery of

7

damages for violation of section 624.155(1)(b)1[.] dating from the date of a proven violation.

Therefore, in this case, the trial court erred in ruling as a matter of law that there was no claim for bad faith for acts which occurred prior to the approval of the settlement . . . . An action prior to that settlement was premature and was subject to dismissal without prejudice. However, upon that settlement, the claim for bad-faith damages accrued from the date the violation of section 624.155(1)(b)1[.] ripened because at that time the final element of the cause of action occurred.

*In sum, we expressly hold that a claim for bad faith pursuant to section 624.155(1)(b)1[.] is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay.* This obligation on the part of an insurer requires the insurer to timely evaluate and pay benefits owed on the insurance policy. We hasten to point out that the denial of payment does not mean an insurer is guilty of bad faith as a matter of law. The insurer has a right to deny claims that it in good faith believes are not owed on a policy. Even when it is later determined by a court or arbitration that the insurer's denial was mistaken, there is no cause of action if the denial was in good faith. Good-faith or bad-faith decisions depend upon various attendant circumstances and usually are issues of fact to be determined by a fact-finder.

. . . .

We continue to hold in accord with *Blanchard* that bringing a cause of action in court for violation of section 624.155(1)(b)1[.] is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract.

*Id.* at 1275-76 (emphasis added).

In reaching the foregoing holding in *Vest*, the supreme court cited with approval our decision in *Brookins v. Goodson*, 640 So. 2d 110 (Fla. 4th DCA 1994). The supreme court described the issue in *Brookins* as "whether a settlement constituted the 'determination of damages' required by *Blanchard* . . . ." *Vest*, 753 So. 2d at 1273. The supreme court then quoted from *Brookins* the following excerpt of our holding and reasoning:

8

The supreme court has recently held that to state a cause of action for first party bad faith there must be an allegation that there has been a determination of the insured's damages. *Imhof v. Nationwide Mut. Ins. Co.,* 643 So. 2d 617 (Fla. 1994). *The court did not, however, require that the damages be determined by litigation,* that there be an allegation of a specific amount of damages or that the damages be in excess of the policy limits. The court was not faced with the circumstance presented here where the policy limits are subsequently tendered by the insurer. The insured in *Imhof* received an award of damages through arbitration of an amount less than the policy limits. The amount or extent of damages was held not to be determinative of whether an insured could bring a first party bad faith claim; the purpose of the allegation concerning a determination of damages was to show that "Imhof had a valid claim." *Id.* at 618.

*We hold that the payment of the policy limits by the insurer here is the functional equivalent of an allegation that there has been a determination of the insured's damages. It satisfies the purpose for the allegation – to show that the insured had a valid claim.*

. . . .

*Neither in Blanchard nor more recently in Imhof does the supreme court suggest that the required resolution of the insured's underlying claim must be by trial or arbitration . . . . However, as noted in Blanchard, a resolution of some kind in favor of the insured is a prerequisite. There was a favorable resolution here.*

*Vest,* 753 So. 2d at 1273-74 (quoting *Brookins,* 640 So. 2d at 112-13) (emphasis added).

Based on *Vest*'s clarification of *Blanchard* and reliance on *Brookins,* we are compelled to hold that an insurer's liability for coverage and the extent of damages, and not an insurer's liability for breach of contract, must be determined before a bad faith action becomes ripe. To paraphrase *Vest,* the determination of the existence of liability and the extent of the insured's damages are the conditions precedent to a bad faith action, along with the notice requirement of section 624.155(3)(a), Florida Statutes (2011). Those first two conditions may be established when a settlement

9

determines the existence of liability and the extent of the insured's damages. As stated in *Brookins*, and as approved in *Vest*, that settlement does not require the damages to be determined by litigation.

Applying the foregoing principles here, the parties' settlement via the appraisal process, which determined the existence of liability and the extent of the insured's damages, established the first two conditions precedent of a bad faith action. Put another way, the appraisal award "constitute[d] a 'favorable resolution' of an action for insurance benefits, so that [the insured] . . . satisfied the necessary prerequisite to filing a bad faith claim." *Trafalgar*, 100 So. 3d at 1158. Thus, the circuit court erred in finding that, because the insurer's liability for breach of contract had not been determined, the insureds' bad faith action was not ripe.

We have considered the insurer's arguments for affirmance. We conclude, without further discussion, that those arguments lack merit.

Based on the foregoing, we reverse and remand for reinstatement of the insureds' bad faith action. We take no position on whether the bad faith action has merit.

Because of the conflict between this court's opinion in *Lime Bay* versus (1) the supreme court's opinion in *Vest*, (2) this court's opinion in *Trafalgar*, and (3) today's opinion, we are compelled to recede from *Lime Bay* to the extent it held that an insurer's liability for breach of contract must be determined before a bad faith action becomes ripe, even though the insurer's liability for coverage and the extent of the insured's damages already have been determined by an appraisal award favoring the insured.

However, we stand by our numerous prior opinions holding that, where the insurer's liability for coverage and the extent of damages have *not* been determined in any form, an insurer's liability for the underlying claim and the extent of damages must be determined before a bad faith action becomes ripe. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Tranchese*, 49 So. 3d 809, 810 (Fla. 4th DCA 2010) (quashing order denying motion to abate bad faith action "because the final determination of coverage and damages for the underlying claim has not been made, which must precede a statutory bad faith action").

*Reversed and remanded.*

DAMOORGIAN, C.J., STEVENSON, GROSS, TAYLOR, MAY, CIKLIN, GERBER, LEVINE, CONNER, FORST, and KLINGENSMITH, JJ., concur.
WARNER, J., recused.

10

GERBER, J., concurs specially with an opinion, in which CONNER, FORST, and KLINGENSMITH, JJ., concur.

GERBER, J., concurring specially.

Based on *Vest*'s controlling nature, I am compelled to concur in the majority opinion. I write separately to express my concern regarding the possible effect of the majority opinion.

In theory, the majority opinion would open the door to allow an insured to sue an insurer for bad faith any time the insurer dares to dispute a claim, but then pays the insured just a penny more than the insurer's initial offer to settle, without a determination that the insurer breached the contract. Such a slippery slope would appear to conflict with the supreme court's own warning in *Vest:*

> We hasten to point out that the denial of payment does not mean an insurer is guilty of bad faith as a matter of law. *The insurer has a right to deny claims that it in good faith believes are not owed on a policy.*

753 So. 2d at 1275 (emphasis added).

This slippery slope may be avoided if an insured was required either to: (1) establish an insurer's liability for breach of contract as a condition precedent to suing an insurer for bad faith; or (2) obtain a settlement amount which is at least a certain percentage above the insurer's initial offer to settle. However, any such requirement is one which the legislature must impose through an amendment to section 624.155, Florida Statutes (2011). This court is unable to impose any such requirement because of *Vest*'s controlling nature. *But see State Farm Mut. Auto. Ins. Co. v. Brewer*, 940 So. 2d 1284, 1286 n.3 (Fla. 5th DCA 2006) ("To obtain a determination regarding liability and the extent of damages owed on the insurance contract [to allow a statutory bad faith claim to proceed], [the insured] *would need to bring an action on the contract . . . .*") (emphasis added).

The policy claim history in this case provides a good example of why the legislature may wish to require an insured to establish an insurer's liability for breach of contract, or to obtain a settlement amount which is at least a certain percentage above the insurer's initial offer to settle, as a condition precedent to suing an insurer for bad faith. Here, after the insureds took two years to file their Hurricane Wilma claim, the insurer took only one month to inspect their home and estimate the amount of their damages. Then, after the insureds took six more months to request

11

the insurer to participate in the policy's appraisal process, the insurer took only one month to agree to the appraisal process. When the parties' appraisers did not agree on a damage estimate, it was *the insurer,* and not the insureds, which first filed a petition requesting the circuit court to appoint a neutral umpire. Within two months of the neutral umpire issuing its own damage estimate, the insurer paid the insureds the neutral umpire's damage estimate minus the policy deductible.

In sum, the record here provides no basis indicating that the insurer breached the contract, much less failed to act in good faith to settle the claim. On the contrary, the record here indicates that the insurer merely exercised its rights under the contract's agreed-upon dispute resolution process of appraisal. The insurer's exposure should be at an end. As our sister court stated in *Hill v. State Farm Florida Insurance Co.,* 35 So. 3d 956 (Fla. 2d DCA 2010):

> The appraisal process . . . is not legal work arising from an insurance company's denial of coverage or breach of contract; it is simply work done within the terms of the contract to resolve the claim. Thus, except under the most extraordinary of circumstances, we do not envision fees for such work to be recoverable . . . . Instead, the fees should normally be limited to the work associated with filing the lawsuit after the insurance carrier *has ceased to negotiate or has breached the contract and the additional legal work [is] necessary and reasonable to resolve the breach of contract.*

*Id.* at 961 (emphasis added). *See also Nationwide Prop. & Cas. Ins. v. Bobinski,* 776 So. 2d 1047, 1049 (Fla. 5th DCA 2001) ("[I]t maintains the better policy of this state to encourage insurance companies to resolve conflicts and claims quickly and efficiently without judicial intervention. Arbitration and appraisal are alternative methods of dispute resolution that provide quick and less expensive resolution of conflicts."). *Cf. State Farm Fla. Ins. Co. v. Silber,* 72 So. 3d 286, 289-90 (Fla. 4th DCA 2011) (after insurer paid appraisal award, insureds had no cause of action against insurer to recover attorney's fees under section 627.428, Florida Statutes, because the purpose of the appraisal process is to resolve disputes without litigation).

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**