IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

PHILLIP LANDERS,

      Appellant,

 v.                                   Case No.  5D15-4032

STATE FARM FLORIDA
INSURANCE COMPANY,

      Appellee.
_____/

Opinion filed January 19, 2018

Appeal from the Circuit Court
for Seminole County,
Jessica J. Recksiedler, Judge.

George A. Vaka and Nancy A. Lauten, of
Vaka Law Group, PL, Tampa, and Kelly L.
Kubiak, of Merlin Law Group, Tampa, for
Appellant.

Matthew J. Lavisky, Anthony J. Russo and
Lee Craig, of Butler Weihmuller Katz Craig
LLP, for Appellee.

ON MOTION FOR REHEARING

COHEN, C.J.

      Upon consideration of Appellee State Farm Florida Insurance Company's Motion

for Rehearing, we grant the motion, withdraw our prior opinion, and substitute this one in

its place.

In this appeal, we consider whether, when an insurance contract provides for an appraisal process, an insured must wait until that process is completed before filing a civil remedy notice pursuant to section 624.155, Florida Statutes (2008). Because we find no such limitation in the statute or relevant case law, we reverse.

In 2009, Phillip Landers's home sustained a loss from suspected sinkhole activity. He submitted a claim to his insurer, State Farm Florida Insurance Company ("State Farm").[1] State Farm hired SDII Global Corporation ("SDII") to conduct a subsidence investigation. SDII verified that sinkhole activity was the cause of the damage, and State Farm admitted coverage. SDII initially concluded that 975 cubic yards of grout needed to be injected into forty-nine holes around the home's perimeter. SDII did not recommend underpinning. After considering the report of a neutral evaluator from the Department of Financial Services pursuant to section 627.7074, Florida Statutes (2008), SDII amended its report to require an additional fifteen grout injection points.

Landers obtained an independent opinion from Biller Reinhart Structural Group ("Reinhart"). In Reinhart's opinion, proper stabilization required underpinning.[2] State Farm provided Reinhart's report for review by the neutral evaluator. The neutral evaluator concluded that underpinning was unwarranted. While State Farm demanded appraisal under the policy to resolve the parties' disagreement over the amount of the loss,[3]

---

[1] Landers's policy provided coverage in excess of $1,000,000.

[2] The neutral evaluator's cost of remediation was estimated at approximately $350,000. Reinhart's cost of remediation was closer to $1,000,000.

[3] The appraisal clause of the insurance policy stated:

> If you and we fail to agree on the amount of loss, either one
> can demand that the amount of the loss be set by appraisal.

Landers agreed, pursuant to the terms of the insurance contract, to proceed with SDII's recommended repair plan, despite his belief that the repairs were inadequate. State Farm placed its appraisal demand on hold while the stabilization repairs were made. Further appraisal would be required to address cosmetic repairs to the home.

After the repairs were completed in September 2011, State Farm reiterated its request for appraisal of the cosmetic damage to the home. The home continued to experience damage after repairs were completed. As a result, Landers hired Sonny Gulati, a geotechnical engineer, to examine the property. In January 2012, while Gulati's report was pending, Landers filed a civil remedy notice ("CRN"), alleging, among other things, claim delay, failure to promptly and properly investigate the claim, failure to adjust the loss, and the failure to tender policy limits. Landers contended that the repairs were completed pursuant to State Farm's expert's recommendation, yet his home remained unlivable. Landers demanded the immediate tender of "the policy limits for dwelling . . . of $1,026,500.00 minus any prior payments that have been made to the insured . . . so that [Landers] may adequately complete the repairs [he] has started to [his] home." In response, State Farm requested that all issues be submitted to appraisal.

In March 2012, Landers brought suit against State Farm for breach of contract. In that suit, State Farm sought to compel appraisal, which Landers opposed. The circuit

---

If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. . . . The appraisers shall then set the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss.

court compelled appraisal, and Landers appealed from that order. This Court affirmed. Landers v. State Farm Fla. Ins. Co., 149 So. 3d 33 (Fla. 5th DCA 2014). In July 2014, the appraisal panel determined that the amount of loss exceeded the policy limits. State Farm tendered the policy limits in August 2014, without any deduction for the amounts previously paid.

Landers then brought the underlying first-party bad-faith suit against State Farm, alleging ten purported violations of sections 624.155(1)(b)(1) and 626.9541(1)(i), Florida Statutes (2008), including allegations of claim delay and low-balling. Landers contended that his damages always exceeded the policy limits and that State Farm acted in bad faith by delaying payment of the policy limits until after appraisal.

State Farm moved for summary judgment. State Farm asserted that when Landers filed the CRN, "there was no contractual amount due and no damages owed under the contract" because a condition precedent to payment—determining the amount of loss through appraisal—had not been fulfilled. Therefore, the CRN was not valid and Landers had no claim. The trial court granted summary judgment, but the order granting summary judgment contained no explanation, findings of fact, or conclusions of law.[4] This appeal followed.

This Court reviews orders granting summary judgment de novo. Volusia Cty. v. Aberdeen at Ormond Beach, 760 So. 2d 126, 130 (Fla. 2000). The issue presented on appeal is primarily a question of law: whether the insurer's demand for appraisal tolls the

---

[4] The only reasoning provided by the court was at the summary judgment hearing, where the court appears to have adopted State Farm's theory that the CRN was void because it was filed before the appraisal was complete.

4

filing of a CRN until the amount of the appraisal has been established. State Farm asserts the CRN was void because Landers's claim was not yet ripe.[5]

Bad-faith claims are governed by section 624.155, Florida Statutes (2008). Section 624.155(1) provides that:

> (1) Any person may bring a civil action against an insurer when such person is damaged:
>
> . . . .
>
> (b) By the commission of any of the following acts by the insurer:
>
> 1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests . . . .

§ 624.155(1)(b)1., Fla. Stat.

As a condition precedent to bringing such an action, Florida's Department of Financial Services and the insurer must be given sixty days' written notice of the claim. See id. § 624.155(3)(a). The CRN must set forth the specific statutory provision the insurer allegedly violated, the facts giving rise to the violation, the relevant policy language, and a statement that the notice is given to perfect the right to pursue the civil

---

[5] State Farm argues alternatively that the CRN was invalid because it failed to comply with the bad-faith statute. Because we cannot determine whether the court ruled on this basis, we decline to address this issue for the first time on appeal. It also is not clear whether the trial court determined if State Farm's handling of the claim constituted bad faith. Statutory bad-faith claims generally involve fact-intensive disputes that are resolved under a "totality of the circumstances" standard. State Farm Mut. Auto. Ins. Co. v. LaForet, 658 So. 2d 55, 62–63 (Fla. 1995); Menchise v. Liberty Mut. Ins. Co., 932 So. 2d 1130, 1133 (Fla. 2d DCA 2006). It is the rare case where "the facts . . . allow a court to rule on a bad faith claim as a matter of law at summary judgment." Kearney v. Auto-Owners Ins. Co., 664 F. Supp. 2d 1234, 1243 (M.D. Fla. 2009). Therefore, both of these issues may be addressed on remand.

remedy authorized by the statute. Id. § 624.155(3)(b). During the sixty-day period, the insurer has an opportunity to cure the alleged violation—no action will lie if, within those sixty days, "the damages are paid or the circumstances giving rise to the violation are corrected."[6] See id. § 624.155(3)(d).

There are three prerequisites to filing a statutory bad-faith claim: (1) determination of the insurer's liability for coverage; (2) determination of the extent of the insured's damages; and (3) the required notice must be filed under section 624.155(3)(a). See Cammarata v. State Farm Fla. Ins. Co., 152 So. 3d 606, 612 (Fla. 4th DCA 2014). The settlement of a sinkhole claim via the appraisal process is sufficient to satisfy the first two requirements. See id. (finding that appraisal award was "'favorable resolution' of an action for insurance benefits, so that [the insured] . . . satisfied the necessary prerequisite to

---

[6] In Talat Enterprises, Inc. v. Aetna Casualty & Surety Co., 753 So. 2d 1278, 1284 (Fla. 2000), the Florida Supreme Court explained that, "in creating this statutory remedy for bad-faith actions, the Legislature provided this sixty day window as a last opportunity for insurers to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed." Furthermore, "[t]he purpose of the civil remedy notice is to give the insurer one last chance to settle a claim with its insured and avoid unnecessary bad faith litigation—not to give the insured a right of action to proceed against the insurer even after the insured's claim has been paid or resolved." Lane v. Westfield Ins. Co., 862 So. 2d 774, 779 (Fla. 5th DCA 2003).

In Talat, the insured obtained an appraisal award that was paid in full before the insured ever filed a CRN. 753 So. 2d at 1283. Accordingly, the insured did not have a statutory bad-faith claim in that case because the insurer remedied the claim before the expiration of the sixty-day period following the CRN. Talat did not address and does not stand for the proposition that a CRN filed after appraisal has been demanded is a legal nullity as State Farm argues.

6

filing a bad faith claim" (alteration in original) (quoting Trafalgar at Greenacres, Ltd. v. Zurich Am. Ins. Co., 100 So. 3d 1155, 1158 (Fla. 4th DCA 2012))).[7]

State Farm argues that the CRN is not effective until all of the contractual preconditions to suit are met and there has been a final determination of coverage and the amount owed. The plain language of section 624.155(3)(d) provides no time limitation for when a CRN may be filed and does not require a final determination of coverage and damages before it is filed. The statute simply states that "no action shall lie" if the bad-faith allegation is corrected or the damages are paid within sixty days of the insurer receiving the notice.

This case is controlled by Vest v. Travelers Insurance Co., 753 So. 2d 1270, 1272 (Fla. 2000). In Vest, the Florida Supreme Court expressly noted that under section 624.155, "there is no statutory requirement which prevents the insured from sending the statutory notice before there is a determination of liability or damages. Nor is the insurer's appropriate response to that notice dependant on such a determination." 753 So. 2d at 1275. Vest clarifies that the purpose of the CRN is to facilitate and encourage good-faith efforts to timely settle claims before litigation, not to vindicate continuing efforts to delay. Filing a CRN before the appraisal process is complete and damages are determined does not render the CRN a legal nullity, precluding Landers's bad-faith claim.[8]

---

[7] The trial court correctly relied on Cammarata for the proposition that a bad-faith claim is not ripe until the appraisal process is complete. However, a finding that an action is not ripe does not mean that the CRN was not appropriately filed.

[8] Federal courts that have addressed this issue likewise have reached the merits of bad-faith claims, even when the CRN was filed after the invocation of appraisal. See Fox Haven of Foxfire Condo. IV Ass'n v. Nationwide Mut. Fire Ins. Co., No. 2:13-CV-399-FTM-29CM, 2015 WL 667935, at *1 (M.D. Fla. Feb. 17, 2015) (denying insurer's motion for summary judgment as facts did not demonstrate that insurer acted in good faith as a

Preventing an insured from filing a CRN before coverage and liability have been conclusively established would frustrate the purpose of the statute by further delaying the time necessary to assess and pay out claims and discouraging insurers from taking timely, independent action on claims. Accordingly, we find that pursuant to the plain language of section 624.155(1)(d), the fact that the appraisal process is ongoing does not render a CRN filed during that process a legal nullity. Once the appraisal process is complete, and a legally sufficient CRN had previously been provided, the conditions precedent to filing a statutory bad-faith claim are met. Cf. Cammarata, 152 So. 3d at 612.

In this case, Landers filed his CRN before the appraisal process was complete. State Farm did not cure the alleged violation within the sixty-day window in section 624.155(3)(d). Landers's position is that had State Farm properly investigated his claim, it would have known that the subsurface repair plan was inadequate. Whether State Farm actually acted in bad faith in resolving his claim presents a question of fact that remains to be resolved. Yet, nothing in the statute or case law precludes the filing of a CRN while a demand for appraisal is outstanding. We reverse the order granting summary judgment and remand for further proceedings.

REVERSED and REMANDED.

NICHOLS, D., Associate Judge, concurs, and concurs specially with opinion.
BERGER, J., concurs in part and dissents in part, with opinion.

---

matter of law; insured demanded appraisal and then filed CRN while the appraisal process was ongoing); see also 316, Inc. v. Maryland Cas. Co., 625 F. Supp. 2d 1187, 1193 (N.D. Fla. 2008).

NICHOLS, D., Associate Judge, concurring specially, with opinion.

I concur with the opinion of the Court and write to specifically address the "Loss Payment" provision of the insurance contract.

It is undisputed that there is a provision in the insurance contract that provides in the event of a disagreement:

> [l]oss will be payable: . . . 60 days after [insurer] receive[s] [insured's] proof of loss and:
>
> (1) there is an entry of a final judgment; or
>
> (2) there is a filing on an appraisal award with us.

As stated by the majority, bad-faith claims are governed by section 624.155, Florida Statutes. Although State Farm paid the claim within sixty days of the appraisal award, section 624.155(b)(1) specifically provides:

> (1) Any person may bring a civil action against an insurer when such person is damaged:
>
> . . . .
>
> (b) By the commission of any of the following acts by the insurer:
>
> 1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests . . . .

§ 624.155(1)(b)1., Fla. Stat. (2008).

State Farm argues that because it paid the claim within sixty days of the completion of the appraisal process as set forth in the insurance contract, it is immune from the

9

application of section 624.155. No language in the statute or the contract prohibited Landers from filing a civil remedy notice under the circumstances of this case.

State Farm's position implies that an insurer could cause delays, or otherwise act in bad faith, so long as payment was made within the sixty-day time period of the appraisal award with impunity. State Farm's position would render the bad-faith statute meaningless.

No opinion is expressed on the merits of Lander's bad-faith cause of action. As the majority aptly concludes, "[w]hether State Farm actually acted in bad faith in resolving the claim presents a question of fact that remains to be resolved."

BERGER, J., concurring in part and dissenting in part, with opinion.

I agree with the majority that nothing precludes the filing of a CRN while a demand for appraisal is outstanding. However, because I also agree with the trial court that no bad faith claim can be maintained under the facts of this case, I would affirm the order granting summary judgment. Accordingly, in all other respects, I dissent.