IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

THOMAS DEMASE AND JOANNE DEMASE,

      Appellants,

 v.                                Case No.  5D16-2390

STATE FARM FLORIDA INSURANCE COMPANY,

      Appellee.

_____/

Opinion filed March 29, 2018

Appeal from the Circuit Court
for Hernando County,
Richard Tombrink, Jr., Judge.

Nancy A. Lauten and George A. Vaka, of
Vaka Law Group, Tampa, and Kelly L.
Kubiak, of Merlin Law Group, Tampa, for
Appellants.

Lee Craig and Matthew J. Lavisky, of Butler
Weihmuller Katz Craig LLP, Tampa, for
Appellee.


ORFINGER, J.

Thomas and Joanne Demase appeal a final order dismissing their bad faith lawsuit

against their insurer, State Farm Florida Insurance Company, with prejudice.  They argue

that the trial court erred in ruling that they could not maintain a bad faith action without

alleging that there had been a favorable resolution of an underlying civil action for

insurance benefits against State Farm, whether in the form of a judgment, arbitration, appraisal, or action on the contract. We agree and reverse the order of dismissal.

The Demases' home was insured under an insurance policy issued by State Farm. In October 2009, their home sustained suspected sinkhole damage, which they reported to State Farm. State Farm hired Geohazards, Inc., which confirmed the existence of sinkhole activity at the property and recommended certain repairs. The Demases performed the recommended repairs, resulting in further damage to their home. Geohazards then re-inspected the home and made additional recommendations. In August 2012, a neutral evaluator agreed there was sinkhole activity at the property and recommended further repairs. The Demases agreed to proceed with the neutral evaluator's recommended repairs under protest. However, in April 2013, State Farm hired MCD of Central Florida to inspect the property. MCD opined that there was no sinkhole activity affecting the Demases' property. When the Demases persisted with their claim for insurance benefits, State Farm demanded additional documentation, inspections, and examinations under oath. The Demases complied with all of these demands.

On August 27, 2014, the Demases served a civil remedy notice ("CRN") pursuant to section 624.155, Florida Statutes (2014), alleging that State Farm engaged in bad faith insurance practices by failing to promptly and properly investigate the claim, adjust the loss, and act with due diligence and good faith to resolve and pay the claim. The Demases demanded the immediate tender of "all insurance monies due and owing . . . that would reasonably place [them] back to their pre-loss condition." The Department of Financial Services accepted the CRN on August 27, 2014, which began a sixty-day period

2

in which State Farm could cure its alleged wrongful conduct.  See § 624.155(3)(a), Fla. Stat. (2014).  While State Farm paid nothing during the sixty-day cure period, on April 10, 2015, it conceded that the Demases' home could not be repaired and tendered the policy limits.

The Demases then brought a first-party bad faith lawsuit against State Farm, asserting various purported violations of sections 624.155(1)(b)1. and 626.9541(1)(i), Florida Statutes (2014).  State Farm moved to dismiss the complaint, relying on Blanchard v. State Farm Mutual Automobile Insurance Co., 575 So. 2d 1289, 1291 (Fla. 1991), which held that "an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue."  State Farm argued that before a bad faith claim could be asserted, the Demases were required to obtain an appraisal award, an arbitration award, or a judgment in an underlying breach of contract case, which they did not do.  The Demases responded that a first-party bad faith action ripens when two conditions have been satisfied: (1) the insurer raises no defense that would defeat coverage; and (2) the actual extent of the insured's loss has been determined.  They submitted that State Farm's payment of the insurance policy limits after the expiration of the sixty-day cure period found in section 624.155 satisfied those requirements, and was the "functional equivalent of a determination of liability-in other words . . . the payment established that [they] had a valid claim."

The trial court dismissed the Demases' complaint, reasoning that it "did not allege there had been a favorable resolution of an *underlying civil action* for insurance benefits against the insurer-whether in the form of a judgment, arbitration, appraisal, or 'action on

the contract.' The Complaint also fails to allege that the Defendant's liability for coverage and the extent of damages has been determined."

This Court reviews orders granting motions to dismiss de novo. E.g., Wallace v. Dean, 3 So. 3d 1035, 1045 (Fla. 2009). In assessing the adequacy of the pleading of a claim, we take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the pleader. Jordan v. Nienhuis, 203 So. 3d 974, 976 (Fla. 5th DCA 2016); Ray Coudriet Builders, Inc. v. R.K. Edwards, Inc., 157 So. 3d 484, 485 (Fla. 5th DCA 2015).

As we shall explain, we hold that an underlying action on the insurance contract is not required for there to be a determination of the insurer's liability and the extent of the damages as a prerequisite to filing a statutory bad faith action. Instead, an insurer's payment of an insurance claim after the sixty-day cure period provided by section 624.155(3) constitutes a determination of an insurer's liability for coverage and extent of damages under section 624.155(1)(b) even when there is no underlying action.

A cause of action for first-party bad faith did not exist at common law. QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, 94 So. 3d 541, 546 (Fla. 2012). In 1982, the Florida Legislature created a first-party bad faith cause of action by enacting section 624.155, Florida Statutes, thereby imposing a duty on insurers to settle their policyholders' claims in good faith. Ch. 82–243, § 9, Laws of Fla. The statute was "designed and intended to provide a civil remedy for any person damaged by an insurer's conduct." QBE Ins. Corp., 94 So. 3d at 546. Specifically, section 624.155(1)(a) provides that "[a]ny person may bring a civil action against an insurer when such person is damaged" by a violation by the insurer of certain statutory provisions, including section

4

626.9541(1)(i), which prohibits unfair methods of competition and unfair and deceptive trade practices regarding claim settlement practices. Section 624.155(1)(b)1. gives an insured a civil remedy against an insurer for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." The damages recoverable by the insured in a bad faith action are those amounts that are the reasonably foreseeable consequences of the insurer's bad faith, which include, but are not limited to, interest, court costs, reasonable attorney's fees, and, in appropriate cases, punitive damages. § 624.155(4), (5), (8), Fla. Stat. (2014).

As a condition to bringing such a bad faith action, Florida's Department of Financial Services and the insurer must be given sixty days' written notice of the claim. See § 624.155(3)(a), Fla. Stat. (2014). "The sixty-day window is designed to be a cure period that will encourage payment of the underlying claim, and avoid unnecessary bad faith litigation." Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 753 So. 2d 1278, 1282 (Fla. 2000) (citation omitted). This cure period allows the insurer "a final opportunity 'to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed.'" Fridman v. Safeco Ins. Co. of Ill., 185 So. 3d 1214, 1220 (Fla. 2016) (quoting Talat Enters., 753 So. 2d at 1284). "[I]f an insurer fails to respond to a civil remedy notice within the sixty-day window, there is 'a presumption of bad faith sufficient to shift the burden to the insurer to show why it did not respond.'" Id. (quoting Imhof v. Nationwide Mut. Ins. Co., 643 So. 2d 617, 619 (Fla. 1994), receded from in part on other grounds, State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 63 (Fla. 1995)). Hence, a statutory bad faith claim under section 624.155 is ripe for litigation

5

when there has been (1) a determination of the insurer's liability for coverage; (2) a determination of the extent of the insured's damages; and (3) the required notice is filed pursuant to section 624.155(3)(a). Landers v. State Farm Fla. Ins. Co., 234 So. 3d 856, 859 (Fla. 5th DCA 2018); Cammarata v. State Farm Fla. Ins. Co., 152 So. 3d 606, 612 (Fla. 4th DCA 2014).

In Blanchard, the United States Court of Appeals for the Eleventh Circuit asked the Florida Supreme Court the following question: "Does an insured's claim . . . under section 624.155(1)(b)(1)., Florida Statutes, for allegedly failing to settle the . . . claim in good faith accrue before the conclusion of the underlying litigation for the contractual . . . benefits?" 575 So. 2d at 1290. The supreme court answered that the insured must obtain the favorable resolution of the underlying first-party action for insurance benefits before the insured can sue for bad faith. Id. at 1291. Although Blanchard refers to a favorable resolution of an "underlying first-party action," "no language in Blanchard expressly states that an insured must have filed any breach of contract action before a bad faith claim accrues." Cammarata, 152 So. 3d at 610.

In Vest, the supreme court clarified Blanchard and ascribed the "underlying first-party action" language to the procedural context in which the Blanchard case arose, stating:

> Blanchard arose in the context of a certified question arising out of an issue as to whether the failure to pursue a bad-faith action for violation of section 624.155(1)(b)1[.] in an action for breach of the underlying insurance contract for nonpayment of benefits was the improper splitting of a cause of action. We held that it was not. Our decision in that case had to do with the timing of the bringing of causes of actions and not as to what claims could be pursued when a claim for bad faith ripened.

6

753 So. 2d at 1275; see also Cammarata, 152 So. 3d at 610 (attributing "underlying first-party action" statement to Blanchard's "procedural context"). The Vest court then held that the Blanchard prerequisites are properly read as conditions that the plaintiff must establish before asserting a bad faith claim. 753 So. 2d at 1275. "Once those elements exist, there is no impediment as a matter of law to a recovery of damages for violation of section 624.155(1)(b)1[.] dating from the date of a proven violation." Id. The court concluded that "[w]e continue to hold in accord with Blanchard that bringing a cause of action in court for violation of section 624.155(1)(b)1[.] is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract."[1] Id. at 1276.

In Vest, the supreme court cited with approval the fourth district's decision in Brookins v. Goodson, 640 So. 2d 110 (Fla. 4th DCA 1994), disapproved of in part on other grounds by Laforet, 658 So. 2d at 62, which held that payment of the policy limits by an insurer was the "functional equivalent" of an allegation that there has been a final determination of the insurer's liability and damages. The supreme court described the issue in Brookins as "whether a settlement constituted the 'determination of damages'

---

[1] A determination of liability and extent of damages does not require that the insured bring and succeed in some form on a breach-of-contract claim against the insurer before the insured can state a claim against the insurer for first-party bad faith. In Time Insurance Co. v. Burger, 712 So. 2d 389 (Fla. 1998), the insured submitted a claim for payment of health care benefits. After the health insurance company refused to pay the bills, the insured sent the CRN. The health insurance company did not cure within sixty days of the notice. The insured filed a bad-faith cause of action based on the health insurance company's failure to pay the claims that he initially submitted. The supreme court recognized the claim for bad faith, although it does not appear that the insured filed an underlying action on the insurance contract.

required by <u>Blanchard</u> . . . ." <u>Vest</u>, 753 So. 2d at 1273. It then quoted the following

language from <u>Brookins</u> with approval:

> The supreme court has recently held that to state a cause of action for first party bad faith there must be an allegation that there has been a determination of the insured's damages. <u>Imhof v. Nationwide Mut. Ins. Co.</u>, 643 So. 2d 617 (Fla. 1994). The court did not, however, require that the damages be determined by litigation, that there be an allegation of a specific amount of damages or that the damages be in excess of the policy limits. The court was not faced with the circumstance presented here where the policy limits are subsequently tendered by the insurer. The insured in <u>Imhof</u> received an award of damages through arbitration of an amount less than the policy limits. The amount or extent of damages was held not to be determinative of whether an insured could bring a first party bad faith claim; the purpose of the allegation concerning a determination of damages was to show that "<u>Imhof</u> had a valid claim." <u>Id.</u> at 618.
>
> *We hold that the payment of the policy limits by the insurer here is the functional equivalent of an allegation that there has been a determination of the insured's damages. It satisfies the purpose for the allegation—to show that the insured had a valid claim.*
>
> . . . .
>
> *Neither in <u>Blanchard</u> nor more recently in <u>Imhof</u> does the supreme court suggest that the required resolution of the insured's underlying claim must be by trial or arbitration . . . . However, as noted in <u>Blanchard</u>, a resolution of some kind in favor of the insured is a prerequisite. There was a favorable resolution here.*

<u>Vest</u>, 753 So. 2d at 1273–74 (quoting <u>Brookins</u>, 640 So. 2d at 112–13) (emphasis added).

Based on <u>Vest</u>'s clarification of <u>Blanchard</u> and its reliance on <u>Brookins</u>, the fourth

district court in <u>Cammarata</u> held that

> an insurer's liability for coverage and the extent of damages, and not an insurer's liability for breach of contract, must be determined before a bad faith action becomes ripe. To paraphrase <u>Vest</u>, the determination of the existence of liability and the extent of the insured's damages are the conditions precedent to a bad faith action, along with the notice requirement of section 624.155(3)(a), Florida Statutes (2011). Those first two conditions may be established when a settlement determines the existence of liability and the extent of

8

the insured's damages.  As stated in Brookins, and as approved in Vest, that settlement does not require the damages to be determined by litigation.

152 So. 3d at 612.

Hence, litigation is not the only means for an insured to obtain the determination of liability and the full extent of his or her damages.[2]  See, e.g., Trafalgar at Greenacres, Ltd. v. Zurich Am. Ins. Co., 100 So. 3d 1155, 1158 (Fla. 4th DCA 2012) ("A judgment on a breach of contract action is not the only way of obtaining a favorable resolution."); see also Cammarata, 152 So. 3d at 613 (en banc) ("[W]e stand by our numerous prior opinions holding that, where the insurer's liability for coverage and the extent of damages have *not* been determined *in any form*, an insurer's liability for the underlying claim and the extent of damages must be determined before a bad faith action becomes ripe.") (second emphasis added); Hunt v. State Farm Fla. Ins. Co., 112 So. 3d 547, 549 (Fla. 2d DCA 2013) (reiterating that judgment on breach of contract action is not only way of obtaining favorable resolution).

An insured may obtain a determination of the insurer's liability and the extent of their damages by litigation, arbitration, settlement, stipulation, or the payment of full policy limits.  Accord Fridman, 185 So. 3d at 1224 ("Certainly, the insured is not obligated to

---

[2] In determining the insurer's liability, courts analyze whether the underlying policy was triggered by the loss.  In other words, the insurer must have at least some exposure, and this exposure needs to be plausible in light of the plaintiff's complaint.  See Blanchard, 575 So. 2d at 1291 ("If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith."); Trafalgar at Greenacres, Ltd., 100 So. 3d at 1157 (holding there is no determination of liability when "the insurer raises no defense which would defeat coverage"); see also Heritage Corp. of S. Fla. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA., 255 F. App'x 478, 481 (11th Cir. 2007) ("[T]he purpose of the allegation concerning a determination of damages [is] to show that '[the plaintiff] had a valid claim.'" (quoting Vest, 753 So. 2d at 1273)).

9

obtain the determination of liability and the full extent of his or her damages through a trial and may utilize other means of doing so, such as an agreed settlement, arbitration, or stipulation before initiating a bad faith cause of action."); Vest, 753 So. 2d at 1274 (implicitly adopting Brookins court's reasoning that payment of policy limits by insurer is evidence of validity of bad faith claim); see Plante v. USF&G Specialty Ins. Co., No. 03-23157CIVGOLD, 2004 WL 741382, at *4 (S.D. Fla. Mar. 2, 2004) (stating that fact that supreme court in Vest reaffirmed fourth district's decision in Brookins suggested that payment of insurance claim satisfies prerequisite for bad faith suit); see also Sammy Sterling Holdings, LLC v. U.S. Aircraft Ins. Grp., No. 16-CIV-21230, 2016 WL 8679130, at *3 (S.D. Fla. June 23, 2016) (finding plaintiffs sufficiently alleged determination of liability as insurer actually admitted liability for loss by issuing payments, albeit partial, in response to plaintiffs' claims and alleged determination of damages as well because partial payment, constituting final amount owed under policy, sufficiently satisfied extent of damages); Sabatula v. State Farm Mut. Auto. Ins. Co., No. 5:11–CV–368-OC-37TBS, 2011 WL 4345302, at *5 (M.D. Fla. Sept. 16, 2011) (holding that by paying full policy amount, insurer conceded that insured plaintiff had valid claim on first-party insurance contract and that insured's damages have minimum value set at amount of policy limits); Hamilton v. Allstate Indem. Co., No. 805CV992T17MAP, 2005 WL 2465021, at *2 (M.D. Fla. Oct. 6, 2005) (stating that insurer's payment of policy limit to insured "serves as the 'functional equivalent' of a determination of the insured's damages" (quoting Allstate Ins. Co. v. Clohessy, 32 F. Supp. 2d 1328, 1332 (M.D. Fla. 1998))).

We read Blanchard, as clarified by Vest, to require only a determination of liability and a determination of damages before suing for bad faith. See Fox v. Starr Indem. &

10

Liab. Co., No. 8:16-CV-3254-T-23MAP, 2017 WL 1541294, at *5 (M.D. Fla. Apr. 28, 2017) ("Under Trafalgar, Hunt, and Cammarata, a plaintiff insured need not allege success on a breach-of-contract claim to sue the defendant insurer for bad faith."); Brookins, 640 So. 2d at 113 ("The bad faith statute imposes no requirement of a prior judgment as a condition precedent to a bad faith claim."). As happened here, the payment of the full policy limits after the sixty-day cure period provided in section 624.155(3) satisfied the requirement that there has been a final determination of the insurer's liability and damages. Vest, 753 So. 2d at 1273–74; Brookins, 640 So. 2d at 112–13; see Marraccini v. Clarendon Nat'l Ins. Co., No. 02-20896-CIV, 2003 WL 22668842, at *2 (S.D. Fla. Oct. 1, 2003) (noting that insurer cannot escape liability under bad faith statute by belatedly paying policy limits after sixty–day cure period has expired, and to hold otherwise would render portion of statute requiring damages to be paid within 60 days meaningless). In obtaining a determination of liability and a determination of damages, the "key" is not the underlying breach of contract action, but rather, the payment by the insurer.[3] See Barton v. Capitol Preferred Ins. Co., 208 So. 3d 239, 243 (Fla. 5th DCA 2016) (holding that insurer's $65,000 settlement payment paid after sixty-day cure period constituted

---

[3] State Farm's reliance on State Farm Mutual Automobile Insurance Co. v. Brewer, 940 So. 2d 1284 (Fla. 5th DCA 2006), in arguing that this Court has recognized that in order to satisfy the condition precedent in Blanchard, the insured would need to bring an action on the contract, is misplaced. Brewer was involved in an automobile accident with an uninsured driver. Brewer, 940 So. 2d at 1285. She later filed a civil remedy notice, alleging that the insurer failed to disclose the applicability of coverage and pay benefits but did not state any amount of benefits or contractual damages allegedly due. Id. *Within the statutory sixty-day cure period*, the insurer paid what was due and cured the alleged violations. Id. That is markedly different from what occurred here.

favorable resolution for insureds even though amount was less than policy limits and amount that insureds initially demanded).

For these reasons, we conclude the Demases' amended complaint adequately states a cause of action. The order of dismissal is reversed and the matter remanded for further proceedings.

REVERSED and REMANDED.

WALLIS, J. and PERKINS, T., Associate Judge, concur.