DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SUSAN CINGARI,**
Appellant,

v.

**FIRST PROTECTIVE INSURANCE COMPANY,**
Appellee.

No. 4D2022-2376

[January 3, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gerard Joseph Curley, Jr., Judge; L.T. Case No. 50-2020-CA-008364.

William D. Mueller, Elliot B. Kula, and W. Aaron Daniel of Kula & Associates, P.A., Miami, and Valorie S. Chavin and James E. Mitchell of Chavin Mitchell Shmuely, Miami, for appellant.

Jay M. Levy of Jay M. Levy, P.A., Miami, for appellee.

CONNER, J.

In this first-party bad faith action stemming from the homeowner's property damage claim, the homeowner appeals a final summary judgment in the insurer's favor. The insurer successfully persuaded the trial court to grant summary judgment in its favor because the claim was not actually covered under the homeowner's policy, even though the insurer had paid the homeowner her full policy limit after appraisal. The insurer claimed it did not discover the coverage exclusion until it had investigated the bad faith claim. On appeal, the insurer argues because the trial court determined that no coverage existed, summary judgment in its favor on the homeowner's bad faith claim was proper. We disagree and reverse and remand for further proceedings.

*Background*

The insurer issued a standard homeowner's insurance policy to the homeowner, including provisions for an appraisal process if the parties could not agree on the amount of damage. After issuance, the homeowner

discovered cracks on the interior and exterior walls of the home and gave the insurer notice of a claim.

Six weeks after the homeowner gave notice of her claim, the insurer confirmed coverage and issued a partial payment of $12,436.63. Nearly a year later, the insurer issued another partial payment of $47,020.00.

Six months after the second payment, the homeowner concluded the insurer was not going to hire a competent adjuster to evaluate the claim. Based on the delay and other perceived deficiencies in adjusting the claim, the homeowner filed a civil remedy notice with the Florida Department of Financial Services, placing the insurer on notice of its bad faith conduct and giving the insurer the opportunity to cure. The notice asserted the insurer violated sections 624.155(1)(b)1. and 3., Florida Statutes (2020), by failing to settle the claim properly and promptly, and section 626.9541(1)(i)3.a., Florida Statutes (2020), by failing to adopt and implement standards for the proper investigation of claims.

After additional time passed, the homeowner invoked the policy's appraisal process. The insurer agreed to participate in appraisal; however, the parties could not agree on an umpire. The homeowner filed suit seeking the appointment of an umpire.

After an umpire was appointed, the appraisal process proceeded, leading to an appraisal award substantially greater than the amounts which the insurer had previously paid under the policy. Three years and eight months after the homeowner first reported the claim, the insurer paid the homeowner the additional amount due pursuant to the appraisal award, resulting in payment of the policy limit.

The homeowner then filed the underlying bad faith complaint. The homeowner alleged the insurer acknowledged her claim, confirmed coverage, and provided two partial payments under the policy. The homeowner further alleged the bad faith claim arose when "[i]nstead of properly and timely adjusting the loss, working with [the homeowner] to determine the fair value of her claim, and issuing full payment for her damages, [the homeowner] was required to demand appraisal under the alternative dispute resolution forum available in the Policy (the 'Appraisal')."

The insurer's answer denied most of the allegations and alleged it always acted in good faith and satisfied its responsibilities under the policy and the Florida Insurance Code. Notably, the insurer did not allege the loss was excluded under the policy.

The insurer moved for summary judgment, acknowledging it initially accepted coverage, agreed to an appraisal, and paid the policy limits. The motion asserted the insurer's investigation of the bad faith claim revealed that the property was damaged by causes excluded under the policy. The motion argued that because there was no coverage under the policy, the insurer did not act in bad faith. The insurer's supporting affidavit attested to the factual assertions in the motion.

The homeowner moved for partial summary judgment as to liability and responded in opposition to the insurer's summary judgment motion. The homeowner's response pertinently stated: "After [the insurer] admitted coverage for the loss and made some payments, the issues of liability, causation, and damages were ultimately settled via the appraisal process, forcing [the insurer] to pay a six-figure appraisal award issued in [the homeowner's] favor." The homeowner's summary judgment motion argued that the insurer's failure to timely pay for and complete repairs forced the homeowner to sell the property at a loss.

Subsequently, the insurer moved to add two affirmative defenses: exclusion and exception under the terms of the policy. The homeowner opposed the amendment, contending the insurer waived those defenses by failing to plead those defenses earlier. The insurer never obtained a ruling on its motion to amend.

At the hearing on the insurer's summary judgment motion, in addition to the arguments raised in its motion, the insurer argued "the underlying coverage dispute" was not yet resolved, and the homeowner was attempting to establish coverage by estoppel. The insurer explained that despite paying amounts not owed to the homeowner, the insurer would not seek reimbursement because promissory estoppel prevented reimbursement.

The homeowner argued that the insurer "openly admit[ted] coverage" in the prior suit to appoint an umpire, and was only now, under advisement of new counsel, "[seeking] to retract its prior admission and get a second bite at the coverage apple to attempt to keep its bad faith procrastination from the scrutiny of a jury." The homeowner argued the insurer's coverage position in the prior suit and full settlement of the claim resolved any coverage disputes and supported a bad faith cause of action against the insurer. The homeowner contended any ruling otherwise would not only be "particularly unjust here" but would also run afoul of Florida Supreme Court precedent precluding insurers from relitigating issues like liability because that "would be an obvious waste of judicial and litigant resources"

3

and would place "an inexplicable burden on plaintiffs to prove their cases twice[.]" In support of her position, the homeowner cited *Fridman v. Safeco Insurance Co. of Illinois*, 185 So. 3d 1214 (Fla. 2016).

In granting summary judgment in the insurer's favor, the trial court specifically found the insurer never contested coverage prior to paying the appraisal award and raised the coverage defense for the first time in the bad faith suit. The trial court also found the experts on both sides seemingly agreed the homeowner's losses were caused by earth settlement, which was not a covered loss under the policy. The trial court concluded a bad faith claim was unavailable because the insurer accepted coverage, paid the policy limits within a reasonable time after appraisal, and would not be seeking reimbursement for payments made. Twice in the order granting summary judgment, the trial court stated that where no coverage exists, a bad faith claim is unavailable.

After the trial court entered a final summary judgment, the homeowner gave notice of appeal.

*Appellate Analysis*

Our Standard of Review

Our review of a summary judgment order is de novo. *Bryant v. GeoVera Specialty Ins. Co.*, 271 So. 3d 1013, 1018 (Fla. 4th DCA 2019).

The Parties' Arguments on Appeal

The homeowner argues the insurer's liability and the homeowner's damages under the policy were conclusively established when the insurer (1) issued full payment of policy limits, (2) paid the appraisal award, and (3) made two partial payments before suit to appoint an umpire was filed. By not litigating its coverage defense in the suit to appoint an umpire, the homeowner contends the insurer waived the opportunity to raise its coverage defense in the bad faith suit. To hold otherwise, the homeowner argues, would permit insurers to relitigate coverage unendingly. The homeowner additionally argues the insurer was not entitled to summary judgment because the insurer never obtained a ruling on its motion to amend its answer in the bad faith suit to assert the coverage affirmative defenses. Thus, the homeowner argues, the trial court granted summary judgment on unpled defenses.

The insurer argues the coverage defense may be raised in a bad faith case because the policy's clear language establishes the loss was not

covered and a coverage defense is not waived by conduct. The insurer similarly argues the gratuitous payments did not create extracontractual coverage. The insurer further argues the homeowner was on notice that the insurer wanted to assert a lack of coverage affirmative defense and the motion undoubtedly would have been granted, and thus, any error in granting summary judgment in its favor was harmless.

The Applicable Substantive Law

The Florida Legislature created the first-party bad faith cause of action by enacting section 624.155, Florida Statutes, which imposes a duty on insurers to settle their policyholders' claims in good faith. *Demase v. State Farm Fla. Ins. Co.*, 239 So. 3d 218, 220 (Fla. 5th DCA 2018). The statutory obligation on the insurer is to timely evaluate and pay benefits owed under the insurance policy. *Fridman*, 185 So. 3d at 1220; *see also Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000). The damages recoverable by the insured in a bad faith action are those amounts that are the reasonably foreseeable consequences of the insurer's bad faith in resolving a claim, which include consequential damages. *Fridman*, 185 So. 3d at 1221.

"[A] statutory bad faith claim under section 624.155 is ripe for litigation when there has been (1) a determination of the insurer's liability for coverage; (2) a determination of the extent of the insured's damages; and (3) the required [civil remedy] notice is filed pursuant to section 624.155(3)(a)." *Demase*, 239 So. 3d at 221; *see also Cammarata v. State Farm Fla. Ins. Co.*, 152 So. 3d 606, 612 (Fla. 4th DCA 2014).

"An insured may obtain a determination of the insurer's liability and the extent of their damages by litigation, arbitration, settlement, stipulation, or the payment of full policy limits." *Demase*, 239 So. 3d at 223 (citations omitted); *see also Fridman*, 185 So. 3d at 1224 ("Certainly, the insured is not *obligated* to obtain the determination of liability and the full extent of his or her damages through a trial and may utilize other means of doing so, such as an agreed settlement, arbitration, or stipulation before initiating a bad faith cause of action."). Additionally, payment of an appraisal award by the insurer constitutes a determination of the insurer's liability and the extent of the insured's damages. *Trafalgar at Greenacres, Ltd. v. Zurich Am. Ins. Co.*, 100 So. 3d 1155, 1157-58 (Fla. 4th DCA 2012).

Importantly, our supreme court stated in *Fridman*:

[W]e hold that an insured is entitled to a determination of liability and the full extent of his or her damages in the [uninsured motorist] action before filing a first-party bad faith action. That determination of damages is then binding, as an element of damages, in a subsequent first-party bad faith action against the same insurer so long as the parties have the right to appeal any properly preserved errors in the verdict.

185 So. 3d at 1216 (emphasis added). Our supreme court also reasoned:

If the amount of the [uninsured motorist] verdict is not binding as an element of damages in the bad faith litigation, it would allow the insurer—or the insured, if the verdict were less than anticipated—a second bite at the proverbial apple. As the Fourth District Court of Appeal stated in *GEICO General Insurance Co. v. Paton*, it would be "such bad policy" that there is not "even a hint of its existence in any case the Supreme Court has decided in this area." 150 So. 3d 804, 807 (Fla. 4th DCA 2014). Where the insurer "participated fully in the first trial with an opportunity to challenge the plaintiff's evidence and a powerful motive to suppress the amount of damages," Florida's "policy is not to give multiple bites at the same apple absent some legal infirmity in the first trial." *Id.*

*Id.* at 1225.

Application of Law to This Case

In the instant case, clearly the homeowner satisfied all the prerequisites for filing a bad faith suit. The argument that "no liability exists because no coverage exists" could have been raised in the suit to appoint an umpire. Purportedly, the insurer did not pursue the "no coverage" defense in that suit because the insurer did not "discover" the coverage defense until after it paid the policy limits and was investigating its defenses to the bad faith suit. Thus, the insurer argued, and the trial court agreed, that the "no coverage" defense and the insurer's gratuitous payments categorically precluded the homeowner's bad faith action. We disagree with that argument.

Based on the statutory duties imposed on insurers under section 624.155, the focus of a first-party bad faith claim is whether the insurer in good faith timely and properly investigated and resolved claims filed by the insured. *Fridman*, 185 So. 3d at 1220; *see also Vest*, 753 So. 2d at

6

1276. The key issue in this case appears to revolve around the issue of the insurer's investigation of the causes for the damage to the homeowner's property in resolving the claim.

Below and on appeal, the insurer cites *Maryland Casualty Co. v. Alicia Diagnostics, Inc.*, 961 So. 2d 1091 (Fla. 5th DCA 2007). More specifically, the insurer focuses on the following language in *Maryland Casualty*: "[I]f there is no coverage, then the insured would suffer no damages resulting from its insurer's unfair settlement practices." *Id.* at 1092. However, the insurer's reliance on the three-paragraph opinion ignores the context in which the Fifth District was writing. In *Maryland Casualty*, a certiorari proceeding, the issue was whether the plaintiff could simultaneously litigate a bad faith claim with a suit addressing whether coverage existed. *Id.* Thus, the Fifth District's statement to the effect that "no coverage liability means no bad faith" was intended to address the case law requiring the preconditions for a bad faith suit and was not intended as a blanket statement that an insurer is entitled to obtain dismissal of the bad faith suit by asserting a coverage defense for the first time. We are not persuaded by the insurer's argument relying on *Maryland Casualty*.

The supreme court in *Fridman* held that the uninsured motorist verdict was a binding damage determination condition precedent for bad faith action. If the uninsured motorist verdict in *Fridman* was a binding damage determination condition precedent for bad faith action, we perceive no logical reason why the liability determination by payment of policy limits is not likewise binding as a condition precedent to prosecute a first-party bad faith action.

If the statutory obligation of the insurer to avoid a bad faith claim is to timely evaluate and pay benefits owed under the insurance policy, *Fridman*, 185 So. 3d at 1220, then the duty to evaluate the claim necessarily includes a duty to investigate the claim properly and promptly, including the cause of injury to the property.

Notably, the insurer's statements that it "proceeded under an erroneous policy interpretation" in the umpire appointment suit and "gratuitously" paid the policy limits and appraisal award certainly raise an inference that the insurer did not properly investigate the claim. The homeowner argued below and on appeal that the failure to properly investigate caused the insurer to improperly extend settlement of the claim through the appraisal process. In doing so, the insurer arguably violated the requirements in section 624.155(1)(b)1. and 2., Florida Statutes (2020), to "attempt[] in good faith to settle claims" and "promptly settle claims[.]"

7

*Conclusion*

Under these facts, we conclude the trial court erred in accepting the insurer's argument that because no coverage existed, the homeowner was not entitled to litigate whether the insurer acted in bad faith. We reverse the final summary judgment and remand for further proceedings on the homeowner's bad faith claim.

*Reversed and remanded for further proceedings.*

GERBER and LEVINE, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**